UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
OCT 29 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

UNITED STATES OF AMERICA,

Plaintiff,

v.

BRITTANY HERBERT,

Defendant.

22-CR-141 (JLS)

**DECISION AND ORDER**

On February 17, 2026, Defendant Brittany Herbert appeared before this Court and pled guilty to both counts of a superseding indictment, charging her with: conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349; and bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2. Dkts. 144, 234, 237, 255. Shortly before her scheduled sentencing date, Herbert, acting *pro se*,[1] filed an "emergency" motion to withdraw her guilty pleas. Dkt. 253. As a result of that motion, this Court took sentencing off the calendar to address the motion. Dkt. 259. After filing that motion, Herbert

[1] In 2022, after Herbert was originally charged, attorney James Auricchio, Esq., was assigned to represent her. Dkt. 22. After filing pretrial motions, Mr. Auricchio, in both July and December 2023, filed motions withdraw as Herbert's counsel. Dkt. 66; Dkt. 84. In July 2024, following a colloquy, the Court granted Herbert's request to proceed *pro se* and appointed attorney Paul G. Dell, Esq., to serve as standby counsel. Dkt. 121. Since 2024, Herbert has been acting *pro se* and Mr. Dell has been acting as her standby counsel.

filed six additional *pro se* motions seeking various forms of relief. *See* Dkts. 261, 262, 263, 265, 271, 272.

For the reasons below, Herbert's motion to withdraw her plea (Dkt. 253) is **DENIED**. Her other motions (Dkts. 261, 262, 263, 265, 271, and 271) also are **DENIED**, except that, to the extent such motions raise sentencing claims or arguments, Herbert may raise them, and any other sentencing arguments she may have, by including them in future sentencing submissions, which she may file in accordance with the forthcoming sentencing submissions scheduling order.

## BACKGROUND

The superseding indictment alleges that, beginning in and around May 2020, and continuing until at least in and around June 2021, Herbert, a resident of Maryland, conspired and schemed with codefendant Brandie S. Williams (a resident of Texas, and principal in a business named "Beyond the Next Level"), and coconspirators Amanda J. Gloria (a resident of Oklahoma), Adam D. Arena (a resident of the Western District of New York and principal in a business named "ADA Auto Group"), and others fraudulently to obtain and misuse multiple COVID-19 emergency relief loans, namely Paycheck Protection Program loans (PPP loans), including a loans for businesses and entities owned by Herbert and her coconspirators.[2] After receiving the PPP loan funds, Herbert, Williams, Gloria, and

---

[2] In separate cases, both coconspirators Gloria (22-CR-38) and Arena (21-CR-168) also pled guilty to fraud charges for their roles in the PPP bank fraud conspiracy involving Herbert and codefendant Williams. In 2022, Honorable William M. Skretny sentenced Arena to a 66-months term of imprisonment. *See* Case No. 21-

Arena misused the PPP loan funds for improper and impermissible purposes, rather than using the funds for permissible business expenses as they falsely represented they were going to do on their fraudulent PPP loan applications.

Specifically, Herbert and coconspirators Williams, Gloria, and Arena were alleged to have electronically submitted, and caused the submission of, false and fraudulent PPP loan applications for loans made available through the Small Business Administration ("SBA") to provide relief for the economic effects caused by the COVID-19 pandemic; diverted fraud proceeds for their personal use and the personal use of others, including to further the conspiracy; and concealed, and caused the concealment of, false and fraudulent PPP loan applications, as well as the existence of the conspiracy. Dkt. 144.

The superseding indictment alleges that Herbert knowingly and intentionally prepared or caused to be prepared false and fraudulent "Payroll Details Report" for each quarter of 2019 and a false and fraudulent "Payroll Report Totals" for 2019 for ADA Auto Group, an entity owned and controlled by coconspirator Arena. In that regard, Herbert, on about August 7, 2020, sent the false and fraudulent payroll detail reports to coconspirator Gloria, knowing that they were to be provided as supporting documentation for a PPP application on behalf of Arena's ADA Auto Group. Gloria then submitted the false and fraudulent payroll detail reports she

CR-168, Dkts. 67, 69. In June 2026, the Honorable Richard J. Arcara sentenced Gloria to a 98-month term of imprisonment. *See* Case No. 22-CR-38, Dkts. 121, 122.

received from Herbert to the victim bank in support of Arena's PPP loan application for ADA Auto Group.

Thereafter, Arena, from the Western District of New York, directed the victim bank to wire the proceeds of the approved PPP loan for ADA Auto Group into a business account under his exclusive control. Not long after, Arena, again from the Western District of New York, electronically signed documents from the victim bank to finalize the PPP loan for ADA Auto Group. The documents included a $953,800 promissory note and a "Certification and Agreement," in which Arena falsely certified that the$953,800 in loan proceeds would be used for "Payroll Costs and Payments on Mortgage Interest, Rent, Utilities and Interest on Other Debt Obligations." Arena then electronically submitted these documents to the victim bank from within the Western District of New York. Dkt. 144, at 8, 10.

Jury selection in Herbert's trial[3] on the superseding indictment was scheduled to commence on February 17, 2026. Dkt. 234. On February 13, 2026—four days before the trial was scheduled to begin—Herbert's stand-by counsel contacted the Court and advised that Ms. Herbert had decided to plead guilty to the superseding indictment. Dkt. 236; Dkt. 255, at 3–4. The Government prepared a *Pimentel* letter, *see United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991), setting forth the maximum possible sentence to which Herbert would be exposed

---

[3] On February 2, 2026, codefendant Williams pled guilty, pursuant to a written plea agreement, to Count 1 of the superseding indictment. Dkt. 226. She is awaiting sentencing.

and the Government's position regarding the applicable sentencing guidelines. Dkt. 237. On February 17, 2026, the date previously set for jury selection, Herbert pled guilty to both counts of the superseding indictment, following a detailed Rule 11 plea colloquy with the Cour. *See* Dkt. 255 (transcript). Sentencing was scheduled for June 17, 2026, and she was permitted to remain on release pending sentence, *see id.* at 44, 46–48.

After Herbert failed timely to provide the Probation Office with the financial documentation they requested to allow them to prepare the Presentence Investigation Report ("PSR"), the Court adjourned sentencing until July 24, 2026. Dkt. 243. Her sentencing was further adjourned until September 18, 2026, after the Court learned that she had not yet been interviewed by Probation. Dkt. 244; Dkt. 245.

More than six months after entering her guilty pleas, and with her sentencing approaching, on August 31, 2026, Herbert filed an "emergency presentencing motion to withdraw guilty pleas, vacate pleas, stay sentencing, and for an evidentiary hearing." Dkt. 253. As a result, the Court adjourned Herbert's sentencing without a date. Dkt. 259. Over the course of the next few weeks, Herbert filed six additional *pro se* motions: (1) a "motion *de benne esse* to determine jurisdiction and statutory authority, adjudicate venue, plea, subpoena, and forfeiture objections, and grant alternative relief," Dkt. 261; (2) a "motion for expedited consideration under Local Criminal Rule 12(f)," Dkt. 262; (3) a "motion to resolve plea status and disputed sentencing matters," Dkt. 263; (4) a "motion for

targeted supplemental disclosure, direct access, preservation, and contested-forfeiture hearing," Dkt. 265; (5) a "motion for leave to supplement the record," Dkt. 271; and (6) "Defendant's objections to sentencing loss, restitution, and forfeiture, and motion for disclosure and hearings," Dkt. 272. The Government responded to Herbert's motion to withdraw her pleas, *see* Dkt. 256, and to Herbert's motions at Dkt. 261, 262, 263, and 265, *see* Dkt. 270. Herbert replied. Dkt. 274.

## DISCUSSION

For the reasons below, the Court denies Herbert's motion to withdraw her guilty pleas, in its entirety, without an evidentiary hearing. The Court resolves her remaining motions as set forth below.

## I. HERBERT IS NOT ENTITLED TO WITHDRAW HER GUILTY PLEAS

### A. Legal Standard

Before sentencing, a defendant may withdraw an accepted guilty plea only after showing a "fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). "A guilty plea is no mere formality, but a 'grave and solemn act.'" *United States v. Arteca*, 411 F.3d 315, 319 (2d Cir. 2005) (quoting *United States v. Hyde*, 520 U.S. 670, 677 (1997)). The "detailed procedures" in Rule 11 of the Federal Rules of Criminal Procedure "are intended to ensure that such pleas are not 'merely tentative.'" *Id.* (quoting *Hyde*, 520 U.S. at 676). The standard to withdraw a guilty plea, therefore, "is stringent because 'society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial

work, and delays and impairs the orderly administration of justice.'" *United States v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008) (quoting *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir.1997)).

When deciding a plea withdrawal motion, "courts consider whether the defendant 'has raised a significant question about the voluntariness of the original plea.'" *United States v. Albarran*, 943 F.3d 106, 117 (2d Cir. 2019) (quoting *United States v. Schmidt*, 373 F.3d 100, 103 (2d Cir. 2004)); *see also Doe*, 537 F.3d at 211 ("[w]here a motion to withdraw a plea is premised on involuntariness, the 'defendant must raise a significant question about the voluntariness of the original plea.'" (quoting *United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997))). On that question, the Court may consider several factors, including: (1) "the amount of time between the guilty plea and motion to withdraw;" (2) "whether the defendant asserted legal innocence in the motion to withdraw;" and (3) whether the government would be prejudiced by withdrawal of the plea." *United States v. Overton*, 24 F.4th 870, 879 (2d Cir. 2022) (citing *Schmidt*, 373 F.3d. at 102–03).

A "defendant's statements during the plea colloquy are not to be taken lightly because '[s]olemn declarations in open court carry a strong presumption of verity'"; later "'conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.'" *United States v. Cabrera*, 563 F. App'x 861, 863 (2d Cir. 2014) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, "[a] criminal defendant's self-inculpatory statements made under oath at his plea allocution . . . are generally treated as

conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999); *accord United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").

Ultimately, "[t]he defendant 'bears the burden of showing ... valid grounds for withdrawal," *Albarran*, 943 F.3d at 118 (quoting *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016)); *Schmidt*, 373 F.3d at 103), and "a defendant's 'reevaluation of the government's case against him' does not justify withdrawal of a plea," *Albarran*, 943 F.3d at 118 (quoting *Schmidt*, 373 F.3d at 103).

An evidentiary hearing on a motion to withdraw a plea "may be appropriate where a defendant has demonstrated factual issues surrounding the voluntariness . . . of his plea." *United States v. Miller*, 3 F. Supp. 2d 376, 380 (W.D.N.Y. 1998). But "no hearing is required 'if the movant's allegations merely contradict his earlier statements made under oath at his plea allocution.'" *Id.* (*quoting Maher*, 108 F.3d at 1529) (citation modified).

**B. Analysis**

Herbert maintains that she is challenging whether she "knowingly and voluntarily surrendered trial when a material, coercive third-person consequence was neither contained in a clean written plea instrument not fully explained in a manner she understood." Dkt. 253, at 3.

According to Herbert, during her in-person plea hearing, she "first learned that the disposition included or was linked to punishment directed at a person who was not a party to her plea and had not been accused of the crimes charged against her." *Id.* She states under penalty of perjury that "the consequence had not been fully understood or explained when she made the plea decision, that it mattered to her decision, and that she would not have pleaded guilty had she understood it." *Id.* In fact, in both her original motion to withdraw and her reply to the Government's response, Herbert repeatedly references an "undisclosed third-person consequence." *See* Dkt. 253, at. 1, 6, 9, 10; Dkt. 271, at 5.

Nowhere, however, does Herbert identify what third party she is referring to, or what punishment or consequence such party was purportedly subject to. Nor can the Court discern any "undisclosed third-person consequence" in this case, much less one that might render Herbert's guilty plea unknowing and involuntary. To the contrary, the record demonstrates that Herbert entered her pleas knowingly and voluntarily, and her vague, conclusory, and unsubstantiated allegations regarding an "undisclosed third-person consequence" are insufficient to establish a "fair and just reason" for allowing her to withdraw her guilty pleas.

First, based on the thorough plea colloquy and Herbert's statements under oath, this Court determines that Herbert failed to raise "a significant question about the voluntariness of the original plea." *Albarran*, 943 F.3d at 117 (quoting *Schmidt*, 373 F.3d at 103). Herbert, who was proceeding *pro se* with the assistance of standby counsel, advised the Court at the outset of the plea proceeding that she

wished to plead guilty to the two counts set forth in the superseding indictment. Dkt. 255, at 4–5. Before placing Herbert under oath, the Court advised her as follows:

> THE COURT: Ms. Herbert, before I accept your guilty pleas, I want to be sure that you are fully informed of your rights and that you understand those rights. The nature of this proceeding today and the consequences to you of pleading guilty. If you don't understand something I say or a question that I ask, say so. I'll try to make it clearer. If you need time to speak with Mr. Dell, I'll accommodate that as well, okay?
>
> THE DEFENDANT: Okay.

*Id.* at 5–6. Herbert then was placed under oath, *id.* at 6, and advised that, if she was untruthful, any statement she made could be used against her in a separate prosecution for perjury or making a false statement. *Id.*; *see* Fed. R. Crim. P. 11(b)(1)(A). After questioning Herbert, the Court determined that she was in full possession of her faculties and competent to proceed. Dkt. 255, at 6–9.

The Court then advised Herbert of the nature of the charges to which she would plead, and the prosecutor explained the charge in each count of the superseding indictment. *Id.* at 9–12; *see* Fed. R. Crim. P. 11(b)(1)(G). The Court proceeded to advise Herbert of her other rights under Rule 11, including: (1) the right to plead not guilty, or having already so pled, to persist in that plea, *see* Dkt. 255, at 12; (2) the right to a jury trial, *see id.* at 12–13; (3) the right to be represented by counsel—and, if necessary, have the Court appoint counsel—at trial and at every other stage of the proceedings, *see id.* at 12; (4) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-

incrimination, to testify and present evidence, and to compel the attendance of witnesses, *see id.* at 13–14; and (5) Herbert's waiver of these trial rights if the Court accepted her guilty pleas, *see id.* at 14.

After advising Herbert of these rights, the Court and Herbert engaged in the following colloquy:

> THE COURT: Ms. Herbert, do you understand all of that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand all of the rights that I just described?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions about any of them?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you want to proceed and give up those rights?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you read the superseding indictment in its entirety?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Do you agree with the charges in the superseding indictment?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand everything in the superseding indictment?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions about it?

> THE DEFENDANT: No.
>
> THE COURT: Okay. Did anyone make any promises, representations or guarantees to you to try to get you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Did anyone promise you any leniency or a particular sentence or any other incentive to get you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Is anyone forcing you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Did anyone try to threaten you, someone in your family or someone close to you to get you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Whether to plead guilty is your decision. You should do what you want to do, not what you think anyone else wants you to do. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is your decision to plead guilty today voluntary and of your own free will?
>
> THE DEFENDANT: Yes.

*Id.* at 15–16.

The Court then advised Herbert of: (1) the nature of each charge to which she would plead, including the elements; (2) the maximum possible penalty, including imprisonment, fine, and term of supervised release; and (3) the Court's obligation to impose a special assessment. *See id.* at 16–20; *see also* Fed. R. Crim. P. 11(b)(1)(G), (H), (L). The Court further confirmed Herbert's understanding of the Court's

obligation, in determining sentence, to calculate the applicable sentencing-guideline range and to consider that range, any departures under the sentencing guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), *see* Dkt. 255 at 32–37; *see also* Fed. R. Crim. P. 11(b)(1)(M), as well as the Court's obligation to impose restitution, *see* Fed. R. Crim. P. 11(b)(1)(K).

The Court also confirmed Herbert's understanding of the sentencing guidelines calculations and the forfeiture and restitution provisions in the *Pimentel* letter, *see* Dkt. 255, at 38–39; *see also* Fed. R. Crim. P. 11(b)(1)(J), (K), as well as her appeal rights, *see* Dkt. 255, at 40; *see also* Fed. R. Crim. P. 11(b)(1)(N), and the immigration consequences Herbert might face, if it were determined she is not a United States citizen, *see* Dkt. 255, at 39; *see also* Fed. R. Crim. P. 11(b)(1)(O).

Regarding the factual basis for the pleas, *see* Fed. R. Crim. P. 11(b)(3), the prosecutor provided a detailed explanation of the facts the Government would rely on to establish each element of each crime to which Herbert would plead guilty. Dkt. 255, at 21–31.[4] Herbert told the Court that the facts set forth by the prosecutor about her and her conduct were true. *Id.* at 27.

---

[4] At one point, Herbert asked to see an email that the Government alleged she sent to coconspirator Gloria, so she could confirm that such email was sent from Herbert's computer; at the Court's request, the prosecutor produced the email, showed it to Herbert, and advised the Court that such "emails reflect the defendant's, Brittany Herbert's, communications between Amanda Glorian and others regarding the preparation of fake payroll detail reports for ADA Auto Group to submit with the PPP application for that company." *Id.* at 24–27.

After eliciting the from the prosecutor the facts that he would present at trial to establish Herbert's guilt, *see id.* at 28–29, the Court engaged in the following colloquy with Herbert:

> THE COURT: Thank you . . . . . Do you understand all of that, Ms. Herbert?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Are you pleading guilty today because you did the things that are charged in Counts One and Two of the superseding indictment?
>
> THE DEFENDANT: Yes.
>
> THE COURT: One of the things that I need to talk to all defendants about—and I do, which is required under the rules, is to ask the defendant next to tell me in their own words what you do that makes you believe you are guilty of each count. So as to Count One, which is conspiracy to commit wire fraud and bank fraud, would you please tell me in your own words what you did.
>
> THE DEFENDANT: So I did the application for Beyond the Next Level. I put the application into the— into the system—into the computer. And then I also received payment from Beyond the Next Level. And then for ADA Auto Group, I received a[n] e-mail from Amanda Gloria. And I forward[ed] that e-mail over to B-Credit Worthy for the payroll breakdown. And then I forwarded the e-mail back to Amanda Gloria for the payroll breakdown.
>
> THE COURT: Did you do those acts as part of a plan with at least one other person to commit a Federal fraud crime?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did you do that knowingly?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is the Government satisfied with that factual basis as to Count One?
>
> [PROSECUTOR]: Yes, Your Honor.
>
> THE COURT: All right. As to Count Two, Ms. Herbert, would you tell me what it is that you did as to Count Two, which is the bank fraud count?

> THE DEFENDANT: I put the application in for Beyond the Next Level and received payment from Beyond the Next Level. And I forward[ed] the e-mails back and forth from Amanda Gloria to B-Credit Worthy for the payroll breakdown.
>
> THE COURT: Was that part of a scheme to defraud a bank?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did you do that intentionally?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you are agreeing that at the time the bank at issue had its deposits insured by the Federal Deposit Insurance Corporation?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is the Government satisfied with that factual basis as to Count Two?
>
> [PROSECUTOR]: The Government is, Your Honor, with one clarification. Count Two relates only to the application submitted on behalf of ADA Auto Group. It does not include the Beyond the Next Level application.
>
> THE COURT: Okay. Do you agree with that, Ms. Herbert?
>
> THE DEFENDANT: Yes.

*Id.* at 29–31.

Finally, before asking how Herbert pled to the charges, the Court confirmed that the Government made "no promises, representations, or guarantees" to Herbert in exchange for her guilty pleas. *Id.* at 41; *see also* Fed. R. Crim. P. 11(b)(2).

Based on all of this, this Court finds that nothing supports Herbert's claim that her pleas were unknowing and involuntary, other than her vague assertion of some unmentioned and unspecified "coercive third-person consequence." Indeed,

"[a] defendant's bald statements that simply contradict what he [or she] said at his [or her] plea allocution are not sufficient grounds to withdraw the guilty plea." *Doe*, 537 F.3d at 211. Moreover, the evidence outlined by the prosecutor, combined with Herbert's own admissions under oath on the record, establish an adequate factual basis for her guilty pleas. *See United States v. Thomas*, 202 F. App'x 531, 534 (2d Cir. 2006) (in wire fraud conspiracy "the government's proffer and [Defendant]'s allocution were sufficient to establish a factual basis for the plea . . . .").

Moreover, each factor in the Rule 11(d)(2)(B) analysis weighs against permitting Herbert to withdraw her guilty pleas. *See Overton*, 24 F.4th at 879. The delay here has been significant—and, in the Court's view, strategic. Herbert did not assert her actual innocence, and the Government would be prejudiced by permitting Herbert to withdraw her pleas.

First, Herbert waited a considerable amount of time before moving to withdraw her pleas. As previously noted, she did not file her motion until six months after she entered the pleas, shortly before her scheduled sentencing date, and just days after she received her PSR and the Government's sentencing memorandum. *See* Dkt. 249; Dkt. 252. The Court finds that this delay is relevant.

That Herbert waited until the PSR was completed (thereby confirming that the sentencing guidelines calculations in the PSR were the same as the ones in the Government's *Pimentel* statement) suggests that she was hoping the PSR finding some lesser loss amount attributable to her. That the PSR did not come out as Herbert hoped does not amount to a valid reason to allow her to withdraw her

guilty pleas. *See United States v. Grimes*, 225 F.3d 254, 259 (2d Cir. 2000) ("The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea.") (citation modified); *see also United States v. Rosen*, 409 F.3d 535, 547 (2d Cir. 2005) (affirming decision to deny a motion to withdraw a guilty plea where the district court found that the defendant's four-month delay in seeking to withdraw his plea was a "strategic" maneuver . . . plainly contrary to the rationale for plea withdrawal").

Thus, the delay here supports concluding that Herbert entered her guilty pleas voluntarily. *See Doe*, 537 F.3d at 213 ("Whereas a swift change of heart may indicate [a] plea made in haste or confusion, the fact that the defendant waited five months to file his motion strongly supports . . . that his plea was entered voluntarily.") (citation modified); *Grimes*, 225 F.3d 254 at 259 (affirming denial of a motion to withdraw based in part on a five-month-delay between the plea and the motion); *see also United States v. Fernandez*, 734 F. Supp. 599 (S.D.N.Y. 1990) (denying withdrawal motion made four months after plea and after defendant had been provided with probation department's sentence calculation), *aff'd*, 932 F.2d 956 (2d Cir. 1991).

Significantly, Herbert does *not* claim that she is actually innocent—either factually or legally—of the charges to which she pleaded guilty. In fact, during her plea colloquy, Herbert stated, under oath, that she was guilty of those charges. She has not repudiated that statement. Nor has she raised any factual argument in

support of any legally cognizable defense. *See United States v. Gonzalez*, 647 F.3d 41, 60 (2d Cir. 2011) (affirming denial of withdrawal motion by defendant who "asserted in his affidavit that he wished to prove his 'legal innocence" but failed to "refer to anything that would corroborate a claim of innocence").[5]

Finally, even though the Government is not required to show that it would be prejudiced by Herbert withdrawing her guilty pleas, withdrawal here would, in fact, prejudice the Government. *See United States v. Cayce*, 319 F. App'x 23, 26 (2d Cir. 2009) ("If the movant is unable to carry his burden of showing that a fair and just reason supports the withdrawal of his guilty plea, the district court need not reach the question of prejudice to the government."); *Torres*, 129 F.3d at 715 ("[T]he government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea.").

Herbert pled guilty on the day that trial was scheduled to begin—long after the Government had filed its pretrial submissions. *See* Dkt. 229 (Government's jury instructions); 230 (Government's witness list); 231 (Government's proposed *voir dire*); 232 (Government's motion *in limine*); 233 (Government's amended exhibit list). Because "the government 'surely would . . . encounter[] difficulties were it required to re-assemble its evidence after' a more than eight-month delay, the

---

[5] In *Gonzalez*, the Court discredited the defendant's claim that he "decided to plead guilty [only] moments before the hearing began" by noting that plea hearing had been scheduled "the day before the hearing." 647 F.3d at 60. Here, Herbert's plea hearing was, at her request, scheduled four days before it actually occurred. *See* Dkt. 255, at 3–4. This fact further undermines any assertion by Herbert that she entered her pleas impulsively, unknowingly, or involuntarily.

government would . . . be[] prejudiced by the withdrawal of [Herbert]'s guilty plea, further weighing against withdrawal." *United States v. Obiorah*, 536 F. App'x 53, 55 (2d Cir. 2013) (quoting *United States v. Carreto*, 583 F.3d 152, 157 (2d Cir. 2009)).

For all of these reasons, the Court further determines that no hearing is warranted. *See Gonzalez*, 970 F.2d at 1100 ( "[n]o hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory"); *see also Maher*, 108 F.3d at 1529 ("The district court may require an evidentiary hearing if the defendant has presented some significant questions concerning the voluntariness or general validity of the plea.").

Because Herbert did not demonstrate a "fair and just reason" for withdrawing her guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B), *see Doe*, 537 F.3d at 210, her "emergency" motion to withdraw her guilty pleas (Dkt. 253) is denied, and the case will proceed to sentencing.

## II. <u>THE CLAIMS IN HERBERT'S REMAINING *PRO SE* MOTIONS ARE WITHOUT MERIT OR RAISE ISSUES THAT SHOULD PROPERLY BE INCLUDED IN HER SENTENCING SUBMISSIONS</u>

Within a few weeks of moving to withdraw her pleas, Herbert filed six additional *pro se* motions seeking for various relief. *See* Dkts. 261, 262, 263, 265, 271, 272. The Court carefully reviewed each motion. To the extent that these motions renew her prior motion to withdraw her guilty pleas, *see, e.g.*, Dkt. 261, at 1 (noting that this motion "also seeks review of the factual basis and voluntariness of

her guilty pleas, with withdrawal under Rule 11 (d)(2)(B) if the required showing is established"); Dkt. 263, at 2 ("[t]he threshold question is which guilty pleas, if any, remain operative under the Court's rulings."); Dkt. 271, at 1 (Herbert "renews her request to withdraw the guilty pleas under Federal Rule of Criminal Procedure 11 (d)(2)(B), and moves for a defined opportunity to obtain the complete plea record and submit a particularized factual supplement before the Court decides the motion"), they are **DENIED** for the reasons set forth in Section I, above.

Herbert's October 9, 2026, request for the "complete plea record," *see* Dkt. 271, is moot because the Court authorized payment for the transcript of the plea hearing and provided the transcript to Herbert's standby counsel in September 2026.

To the extent that Herbert's motions contain undeveloped arguments related to unspecified defects in the indictment and grand jury process, a potential defense involving venue, the manner in which certain subpoenas were served, as well as requests for various items of discovery, *see, e.g.*, Dkt. 261, at 2–13, such claims are frivolous because a knowing and voluntary guilty plea waives all non-jurisdictional defects in any prior stage of the proceedings. *See Maher*, 108 F.3d at 1528.

Also frivolous is her request to submit a "particularized factual supplement" prior to the Court deciding her motion to withdraw, *see* Dkt. 271, at 1, because Herbert has long had access to the Government's discovery in this case, as well as the Government's trial witness list, trial exhibit list, and trial exhibits themselves—all of which were provided to Herbert on or before the October 2025 final pretrial

conference. *See* Dkts. 155, 173, 182, 201. As explained in Section I, above, the Court rejects any belated argument that the existence of some unidentified disputed fact warrants further discovery or a hearing on her motion to withdraw. *See* Dkt. 271. Notwithstanding Herbert's vague discovery requests, "[s]he does not cite to a single example of evidence that could have possibly been discovered[,] nor does [s]he identify any facts that would have had a bearing on the plea negotiations or h[er] decision to plead guilty"; her claim, therefore, is "deficient." *See United States v. Logan*, 845 F. Supp. 2d 499, 512 (E.D.N.Y. 2012).

A defendant "must present some significant questions concerning the voluntariness or general validity of the plea to justify an evidentiary hearing," and as already discussed, here, "there were sufficient indications of the voluntariness of the defendant's plea based on [her] own rendering of the facts" for the Court to conclude that no hearing is necessary. *See Doe*, 537 F.3d at 213 (citation modified). Despite their volume, Herbert's submissions do not present any significant questions about the voluntariness or validity of her guilty pleas.

Finally, to the extent that Herbert requests the opportunity to contest any forfeiture, restitution, and/or any information or calculations set forth in the PSR, *see* Dkt. 261, at 1 (Herbert "contests the proposed $21,953.10 forfeiture and expressly requests a hearing under Rule 32.2(b)(1)(B)); Dkt. 262, at 3 ("I contest the Government's requested $21,953.10 forfeiture and request a hearing"); Dkt. 263, at 2 (maintaining that she "specifically disputes" the Guidelines range set forth in the PSR); Dkt. 265 (objecting to the PSR and contesting forfeiture); Dkt. 271; Dkt. 272,

at 1 (Herbert "objects to the government's asserted guideline loss bracket, any unsupported restitution amount, and the requested $21,953.10 forfeiture judgment"), she may include those claims as part of her forthcoming sentencing submissions.

Accordingly, Herbert's remaining motions (Dkts. 261, 262, 263, 265, 272), are **DENIED**, without prejudice to the extent that Herbert may contest any forfeiture, restitution, and/or any information or calculations set forth in the PSR, by including those arguments in setting forth such claims in any sentencing submissions in accordance with the forthcoming, separately issued sentencing submissions document.

## CONCLUSION

For all of these reasons, Herbert's requests to withdraw her guilty pleas is **DENIED**, and all of her motions (Dkt. 253, Dkt. 261, Dkt. 262, Dkt. 263, Dkt. 265, Dkt. 271, Dkt. 272) are **DENIED**, except that she may contest any forfeiture, restitution, and/or any information or calculations set forth in the PSR, by setting forth such claims in any sentencing submissions she files in accordance with the deadlines set by the Court. The Court will set the sentencing date, and deadlines for all sentencing-related submissions, in a separate order.

SO ORDERED.

Dated: October 29, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE